# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ALFREDO RINCON, | CASE NO. 09cv2698-JLS (NLS) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO DISMISS** |
| vs. | |
| MATTHEW CATE, et al., | [Doc. No. 15.] |
| Defendants. | |

## I. INTRODUCTION

Alfredo Rincon ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis* is currently incarcerated at Centinela State Prison ("CEN") in Imperial, California. He filed a civil rights Complaint on November 30, 2009, pursuant to 42 U.S.C. § 1983 [Doc. No. 1]. Plaintiff claims the California Department of Corrections and Rehabilitation ("CDCR") and CEN officials violated his Eighth Amendment right to adequate medical care by acting or failing to act with deliberate indifference to his need for a liver transplant. (Compl. at 2-7.) Plaintiff seeks both general and punitive damages as well as injunctive relief. (*Id.* at 18-19.)

Defendants Matthew Cate, Secretary of CDCR, and Drs. Barreras, Khatri, and Frueh, CEN Chief Medical Officers, have filed a Motion to Dismiss arguing: (1) collateral estoppel; (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (3) that CDCR's delivery of medical care for prisoners is under the jurisdiction of a Receiver; (4) that injunctive relief must come through the Receiver; and (5) qualified immunity. [Doc. No. 15.] Plaintiff

1  has filed an Opposition [Doc. No.16] to which Defendants have filed a Reply [Doc. No. 17].

2  The Court takes the papers under submission without oral argument and for the reasons
3  outlined below **RECOMMENDS** Defendants' motion be **GRANTED**.

## II. PROCEDURAL & FACTUAL BACKGROUND

In 2007, Plaintiff was told he had one year to live if he did not receive a liver transplant. (Compl. at 3.) On March 24, 2008, the University of California at San Diego Medical Center ("UCSD") preliminarily approved Plaintiff for a transplant procedure. [*Id.; see also* Defs.' Attachs.[1] at 13-14.] In a memorandum dated April 4, 2008, Dr. Alan Frueh, CDCR Chief Medical Officer, stated CDCR could not "guarantee funding for three years post transplant regardless of [Plaintiff's] incarcerated status." [*Id.; see also* Defs.' Attachs. at 51.] Subsequently, on April 14, 2008, UCSD declined to carry out the procedure. [*Id.; see also* Defs.' Attachs. at 11-12.]

On April 24, 2008, Plaintiff filed an inmate appeal stating that CDCR staff had "refused to pay for life saving treatment" and that he was experiencing pain as a result of his liver cancer and Hepatitis C. [Defs.' Attachs. at 2.] He requested that a liver transplant be provided and that he be given "effective pain medication(s)." [*Id.*]

At the first level of appeal, Plaintiff stated he "understood the reason for previous denial of narcotics [was] so not to jeopardize the transplant procedure if approved." [Defs.' Attachs. at 5.] On June 18, 2008, Defendant Khatri informed Plaintiff that approval of a liver transplant was not within the prison's jurisdiction but that his appeal would be partially granted with regard to the request for pain medication. [*Id.* at 3.] On July 15, 2008, at the second level of appeal, Defendant Barreras partially granted the appeal and indicated that there were no formal changes to the first level appeal response. [*Id.* at 5.] On September 23, 2008, the director's level review was issued and stated that Plaintiff was receiving the medical care and treatment deemed medically necessary. [*Id.*] At that time Plaintiff was being evaluated at Loma Linda University Medical Center ("LLMC") for a liver transplant. [*Id.*]

---

[1] All references to "Defs.' Attachs." are to exhibits lodged along with Defendants' Motion to Dismiss. The Court takes judicial notice of these exhibits pursuant to Federal Rule of Evidence 201(d) (court shall take judicial notice if requested by a party and supplied with the necessary information).

On August 18, 2009, Plaintiff filed a Petition for Writ of Habeas Corpus in State court alleging that prison medical staff were deliberately indifferent to his medical needs by denying him a liver transplant and pain medication. [Defs.' Attachs. at 1-25.] On August 24, 2009, the Superior Court for the County of Imperial issued an Order to Show Cause instructing the Office of the Receiver to file a Return to Plaintiff's petition.[2]

On November 20, 2009, the Receiver filed a Return with the Superior Court, stating that pursuant to "TACE" therapy treatment received at UCSD Plaintiff's liver tumors had shrunk to undetectable sizes and that laboratory studies on April 2, 2009 showed that Plaintiff's liver and kidneys were functioning well. [Defs.' Attachs. at 30.] As such, Plaintiff was no longer a good candidate for a liver transplant and because his medication had been corrected, "the issues raised by [Plaintiff] have been resolved since filing his grievance." [*Id*. at 31.]

On February 22, 2010, the Superior Court issued an order denying Plaintiff habeas relief and holding, "The petition is now moot, as the uncontroverted medical evidence before the court shows that petitioner's condition has changed, and that he is no longer a candidate for transplant." [Defs.' Attachs. at 55.]

On November 30, 2009, Plaintiff filed this federal § 1983 action against Defendants.

### III. DISCUSSION

*A.   Collateral Estoppel*

Defendants argue that because this civil rights action relitigates the constitutional issues already adjudicated by the state court in ruling on Plaintiff's state habeas petition, Plaintiff is collaterally estopped from raising them here in federal court. (Defs.' Mem. at 5.) Plaintiff contends that collateral estoppel should not apply because he seeks punitive damages based on a past injury as opposed to injunctive relief. He also states the issue should be resolved now because his medical condition is likely to change and the issue of a transplant will likely recur.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause

---

[2] California Prison Health Care Receivership is the body assigned to oversee the delivery of medical services to inmates under the custody of CDCR. *See Plata v. Schwarznegger*, No C01-1341 THE (N.D. Cal. Feb. 16, 2006).

1  of action involving a party to the first cause." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)
2  (internal citation omitted).  Collateral estoppel applies in § 1983 actions to preclude claims
3  identical to those adjudicated in state court where the court "afforded a full and fair
4  opportunity for the issue[s] to be heard and determined under federal standards." *Silverton v.*
5  *Dep't of Treasury,* 644 F.2d 1341, 1347 (9th Cir. 1981) (giving preclusive effect to state habeas
6  petition in subsequent § 1983 action brought in federal court); *see also Allen*, 449 U.S. at 103-
7  104.

8  Defendants state that Plaintiff had a full and fair opportunity to have his claims
9  determined and that the denial of habeas was "final and a decision on the merits."[3]  (Defs.'
10 Mem. at 7.]  The Court disagrees.  The Superior court denied Plaintiff's petition as moot.
11 [Defs.' Attachs. at 55.]  Mootness deprives a court of "'power to declare the law' by deciding
12 the claims on the merits" and thus a judgment of mootness is not based on a full and fair
13 determination of the claims raised.  *In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005).  A
14 dismissal for mootness is a dismissal for lack of jurisdiction "and a court that has no
15 jurisdiction cannot enter a judgment with preclusive effect." *In re Pattullo*, 271 F.3d 898, 901
16 (9th Cir. 2001) (internal quotation and citation omitted).  Defendants mistakenly view the state
17 court's finding that "petitioner's condition has responded to treatment and that petitioner is no
18 longer a candidate for transplant" as a substantive finding on the merits.  However, Plaintiff
19 was not claiming that his condition had not changed.  His substantive claim was that because
20 CDCR officials told UCSD they could not guarantee funds for post surgical care, UCSD
21 refused to conduct the transplant and that this constituted a violation of his rights under the
22 Eighth Amendment.  The state court did not decide Plaintiff's constitutional claim of deliberate
23 indifference to medical needs.

24 Moreover, although Plaintiff's improved condition did render his request for a
25 transplant and for injunctive relief moot, this case falls into an exception to mootness because

26
27 [3] Application of collateral estoppel is governed by state law. *Allen*, 449 U.S. at 96. Five factors are to be considered: (1) issues must be identical; (2) issue must have been actually litigated;
28 (3) issue must have been necessarily decided; (4) prior judgment must have been final and on merits; and (5) party against whom asserted must be same as in prior action. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990).

1    the challenged action is "capable of repetition, yet evading review." *See Center for Biological*
2    *Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (there must be reasonable expectation that
3    injury will arise again and that it is likely to become moot before litigation is complete due to
4    inherently limited duration of injury).  Nowhere in the record is there a medical opinion that
5    Plaintiff is "cured" of his cancer.  LLUMC reported that "currently" there is no indication for
6    a liver transplant, and the Receiver concluded Plaintiff was not suitable "at this time" for a
7    transplant. [Defs.' Attachs. at 29-30.]  Plaintiff's tumors have been shrunk to "undetectable
8    sizes," not eradicated altogether. [*Id.*]  Plaintiff was given a year to live in March 2007.  Had
9    the TACE treatment not worked, Plaintiff could have died before he had an opportunity to
10   submit his April 24, 2008 administrative appeal let alone his August 18, 2009 state habeas
11   petition.

12        Accordingly, the Court **RECOMMENDS** that collateral estoppel not be applied to
13   preclude Plaintiff's claim and that Defendants' Motion to Dismiss in this regard be **DENIED**.

14   B.    *Plata v. Schwarznegger*

15        Dismissal Against Cate

16        Defendants seek to dismiss the case against Secretary of CDCR,  Matthew Cate,
17   pursuant to the decision in *Plata v. Schwarznegger*, No C01-1341 THE (N.D. Cal. Feb. 16,
18   2006).  *Plata* involved a class action by California prisoners challenging deficiencies in prison
19   medical care that violated the Eighth Amendment and the Americans with Disabilities Act, 42
20   U.S.C. §§ 12101-12213.  *Plata v. Schwarznegger*, 603 F.3d 1088, 1090 (9th Cir. 2010).  In
21   February 2006, the United States District Court for the Northern District of California issued
22   an order appointing a Receiver to whom all the powers of the Secretary of CDCR regarding
23   delivery of medical care were transferred. *Id*. at 1092.  The Receiver has established an Office
24   of the Receiver and the receivership continues to be in effect.

25        Therefore, Defendant Cate is not liable under Plaintiff's alleged indifference by prison
26   staff to his medical needs.  Nor has Plaintiff asserted any personal or direct involvement by
27   Cate in the denial of medical care. *See Redman v. County of San Diego*, 942 F.2d 1435, 1446
28   (9th Cir. 1991) (en banc) (A supervisory official may be liable in a § 1983 action only if he or

1 she was personally involved in the constitutional deprivation, or if there was a sufficient causal 2 connection between the supervisor's wrongful conduct and the constitutional violation). 3 Accordingly, the Court **RECOMMENDS** Defendant Cate's Motion to Dismiss be 4 **GRANTED**.

Case to be Brought Through Federal Receiver

Defendants contend Plaintiff's claim for injunctive relief should be dismissed and brought through the Receiver because he is part of the class in the *Plata* case and his interests are already being provided for in that context. (Defs.' Mem. at 12.)

As a general proposition, a plaintiff who is a class member in a separate action for equitable or injunctive relief from prison conditions may not maintain an individual suit raising the same subject matter. *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979). Plaintiff in this case is necessarily a member of the *Plata* class because he is a state prisoner with serious medical needs. However, in *Burnett v. Dugan*, 618 F.Supp.2d 1232 (S.D. Cal. 2009), Judge Lorenz of this district noted that the stipulation[4] in *Plata* provided an exception for cases in which a prisoner required "urgent medical care" and was attempting "to enforce a specific medical treatment or doctor's order related only to that individual plaintiff." *Burnett*, 618 F.Supp.2d at 1237. Thus, because Plaintiff's case is specific to his urgent medical need rather than the general system-wide health care provisions at issue in *Plata*, he may maintain a separate suit arising from his discrete medical condition.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss on this basis be **DENIED**.

*C.     Dismissal for Failure to State a Claim*

Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule

---

[4] The members of the class and the CDCR entered into a stipulation to "implement Health Care Services Division Policies and Procedures" that are "designed to meet or exceed the minimum level of care necessary to fulfill the defendants' obligation to plaintiffs under the Eighth Amendment." *Burnett*, 618 F.Supp.2d at 1236.

12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

### Eighth Amendment Standard

Prison officials violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). A plaintiff must prove that defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998), *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)). A prisoner's civil rights will only be abridged if "the indifference to his medical needs [is] substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Lab's*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).

A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "'If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. County,* 290 F.3d 1175, 1188 (9th Cir. 2002)). "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106).

### Application to Plaintiff's Case

Plaintiff alleges that UCSD eventually rejected him for the transplant because

Defendant Frueh told them CDCR would not provide medical care financing for the three year period following the transplant. [Compl. at 3.] Thus, Plaintiff appears to argue Frueh deliberately interfered with his medical treatment and effectively denied the life-saving transplant he needed.

The record reflects that on March 24, 2008, UCSD Medical Center sent a letter to Plaintiff stating that he was "surgically acceptable as a candidate for the liver transplant procedure." [Defs.' Attachs. at 14.] The letter contained a proviso; "However, your Clinical plan of care [] is of great importance to the Committee. <u>Your case was currently deferred.</u> Once a written comprehensive understanding has been reached between UCSD and the California Department of Corrections regarding your clinical plan of care, your case will be represented and re-evaluated for listing on the UNOS waiting list by the Committee." [*Id.*]

On April 4, 2008 Defendant Frueh wrote to UCSD concerning Plaintiff's care. The following is an excerpt from the relevant portion of the correspondence:

> Your requests were the following:
>
>> 1.   Guarantee of financial funding for 3 years post-transplant regardless of incarceration status: We understand that the CDC's jurisdiction financially or otherwise ends when a person is released from custody. We also understand that the CDC can tell us the length of the inmate's expected incarceration and whether they will be up for parole within that time period.
>
> *CDCR cannot guarantee funding for three years post transplant regardless of incarceration status. CDCR will pay for medical care while [Plaintiff] is incarcerated. [Plaintiff's] expected release date is 2018. However, CDCR cannot guarantee that date. There is always the possibility, albeit slight, that new evidence or information might result in exoneration or a reduced sentence.*

[Defs.' Attachs. at 51.] UCSD responded to this correspondence with a letter stating that Plaintiff's case for organ transplantation was formally declined due to several factors one of which was CDCR's representation that they could "not guarantee funding for three years post transplant regardless of incarceration status." [*Id.* at 11.] The UCSD letter stated that the organ transplant program "remains liable for its short and long-term outcomes for Graft and Patient survivals for a period of no less than three calendar years after transplant." [*Id.*] By way

- 9 -                                                                          09cv2698

1 of clarification, Defendant Frueh then sent a further letter to UCSD stating:

2
3
4
5
6
7
> I want to point out that in your attached letter the quote 'CDCR cannot guarantee funding for three years post transplant regardless of incarceration status' is ambiguous since it is taken out of context. [] The sentence which follows it is essential to the understanding of CDCR's position. [] That statement is, 'CDCR will pay for the medical care while [Plaintiff] is incarcerated.' [] The summary to my letter was, 'CDCR will pay for [Plaintiff's] medical care as long as he is under CDCR jurisdiction.' [] I hope there is no misunderstanding. Please call me if further clarification is needed."

8 [Defs.' Attachs. at 28-29.] UCSD did not respond to this letter.

9 From the above facts, it is clear that UCSD's final refusal of a transplant was based on
10 several factors, not just funding for post transplant care.[5] Even if the Court were to assume the
11 final decision turned on representations by Frueh with regard to financing for such care, the
12 Court does not read Frueh's correspondence to UCSD as meaning CDCR would not provide
13 the care Plaintiff would require. On the contrary, Defendant Frueh went so far as to clarify in
14 a follow-up letter [Defs.' Attachs. 28-29] to UCSD that CDCR's position is that they would
15 fund treatment as long as Plaintiff was in custody. It is possible that Plaintiff misunderstood
16 the sentence "CDRC cannot guarantee funding for three years post transplant regardless of
17 [Plaintiff's] incarcerated status" to mean that even if he were incarcerated CDCR could not
18 guarantee funding for three years. The Court agrees the point could have been made more
19 clearly in the first place but Frueh recognized this and clarified that *regardless of the three-*
20 *year benchmark set by UCSD* the operative focus is the fact of incarceration, which looked
21 likely until 2018. In Frueh's initial memorandum, by stating Plaintiff's release date as 2018

---

[5] The text of the letter reads, "As we have previously communicated to CDCR, the assessment of patient suitability for an organ transplant depends on several factors. While not in order of importance, the first factor involves the potential for long term success of the transplanted candidate (Graft and Patient Survival). This factor contemplates issues such as the current physical ability to endure the rigors of such a significant medical/surgical intervention. In addition, the probability for a firm long term psychological support represents an important consideration. Another factor that can not go without consideration, . . .is the probability for long term financial support. Finally, the existence of a contract with a responsible and fiscally sound party as Payor must be taken into account in respect to the overall probability for a successful transplant and a long-term post-transplant commitment to a complex medical regimen. . . . ¶ At this juncture, there does not seem to be a preponderance of these factors for a reasonable level of potential success in the incarcerated patient population. In addition, your memo clearly indicates that "CDCR cannot guarantee funding for three years post transplant regardless of incarceration status." [Defs.' Attachs. at 11.]

1  and by indicating that there was only a slight chance that he could be released prior to that
2  time, his response was actually favorable to Plaintiff's position.

3     Defendants Barreras and Khatri responded to Plaintiff's administrative appeals
4  regarding medication and the transplant. As they stated in their letters to Plaintiff they were
5  not in a position to grant Plaintiff a transplant. However, Plaintiff's request to resume the
6  medication was granted. Moreover, only six days following UCSD's rejection letter, on April
7  17, 2008, CDCR referred Plaintiff to the Stanford University Transplant Program which
8  refused to see him. [Defs.' Attachs. at 29.] Two days later on August 19, 2008 Plaintiff was
9  seen by a physician at LLUMC. [*Id.*] The consultation report stated that Plaintiff would be
10 considered for a transplant and that further testing would be done. [*Id.*] An MRI and CT scan
11 of the liver were done at that time. [*Id.*] Plaintiff immediately began being monitored and
12 continues to be monitored at LLUMC.

13    Defendants all responded to Plaintiff's medical needs and requests without delay. Even
14 if Plaintiff ascribed a delay in receiving a transplant to any action of Defendants, the delay did
15 not lead to further harm. In fact, Plaintiff's condition has responded to the treatment provided
16 and improved to such a degree that he no longer requires a transplant at this time. From this
17 record the Court cannot reasonably infer that Defendants were deliberately indifferent to
18 Plaintiff's serious medical. Accordingly, the Court **RECOMMENDS** that Defendants'
19 Motion to Dismiss based on failure to state a claim be **GRANTED**.

20 D.  *Qualified Immunity*

21    Defendants assert protection against civil damages under the doctrine of qualified
22 immunity. (Defs.' Mem. at 12-14.) Under this doctrine, state officials are protected from
23 "liability for civil damages insofar as their conduct does not violate clearly established
24 statutory or constitutional rights of which a reasonable person would have known." *Harlow
25 v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry has two parts: (1) "whether the law
26 governing the official's conduct was clearly established;" and (2) whether "under that law, a
27 reasonable official would have believed the conduct was lawful." *Somers v. Thurman*, 109
28 F.3d 614, 617 (9th Cir. 1997); *Saucier v. Katz*, 533 U.S. 194, 199 (2001). Qualified immunity

entitles government officials to "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The law regarding deliberate indifference to serious medical need under the Eighth Amendment is clearly established. However, having decided that Defendants' actions do not raise a reasonable inference that Defendants violated Plaintiff's constitutional right to medical care, the Court also concludes that under the law, a reasonable official would not have believed the conduct was unlawful. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss on this ground be **GRANTED**.

### IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED**. This report and recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than **December 13, 2010** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 23, 2010** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: November 15, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court